Lyman T. SHEPARD, Petitioner,

v.

Larry TAYLOR, Warden, Metropolitan Correctional Center, and Maurice Sigler, Chairman, United States Parole Commission, Respondents.

No. 77 Civ. 83 (CHT).

United States District Court, S. D. New York.

June 14, 1977.

William J. Gallagher, Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner; Phylis Skloot Bamberger, Gordon Johnson, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., Southern District of New York, New York City, for respondents; Carl T. Solberg, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

On January 24, 1977, this Court denied a petition for a writ of habeas corpus seeking the release of Lyman Shepard from federal custody on the ground that the United States Parole Commission ("Commission") had wrongfully denied his request that it issue subpoenas for the institutional records of his term at New York State prison and for the presence of his New York State correctional counselor at his federal parole revocation hearing. Shepard contended that the Commission's refusal to grant the subpoenas unconstitutionally deprived him of due process of law. The Commission's refusal was based upon its decision that such material was not required in determining whether revocation of Shepard's parole was appropriate. Although it was clear that the information would have amplified Shepard's position at the parole hearing, this Court held that Shepard under the facts and circumstances of this case was not deprived of due process by the Commission's refusal to subpoena such information.

On appeal, the United States Court of Appeals for the Second Circuit reversed this Court's holding, explaining as follows:

"[S]ince the parolee's institutional record can be one of the most significant factors

in predicting his ability to live peacefully in society, *see Moody v. Daggett*, 429 U.S. 78, 84, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), we believe that the Commission should reconsider its decision not to permit Shepard to subpoena his New York State parole file and its failure to require the presence of Mr. Haley [the state correctional counselor] at the hearing. The appellant argues persuasively that the psychological reports in his state file are not 'duplicative,' *see* 1976 U.S.Code Cong. & Adm.News 367, and will contradict earlier profiles compiled when he violated his federal parole. Mr. Haley, Shepard contends, will supply details of the appellant's progress at Clinton and his testimony will significantly enhance the impact of the conclusory impressions recited in his letter to the Commission. We agree with the Government that neither the statute, 18 U.S.C. § 4212(a)(2)(D), nor applicable regulations, 28 C.F.R. § 2.51, 41 Fed.Reg. 37330 (Sept. 3, 1976), afford the appellant an unfettered right to 'compulsory process.' We, nevertheless, believe that in this unusual case any detailed evidence of institutional progress that will aid at the rehearing to predict Shepard's ability to readjust to society is relevant—indeed crucial." *Shepard v. Taylor*, 556 F.2d 648 at 654 (2d Cir. 1977) (footnotes omitted).

The court of appeals directed:

"The judgments of the district court dismissing the petitions for a writ of habeas corpus are reversed with directions that the writ shall issue unless the U.S. Parole Commission conducts a hearing in accordance with this opinion within 14 days. The mandate shall issue forthwith." *Id.*

A new hearing was scheduled for June 10, 1977, and petitioner again requested the Commission to subpoena the records and witness. The Commission again denied the request and adhered to its earlier position that the material sought to be subpoenaed was not necessary for proper consideration of Shepard's case since there was already in the Commission's possession sufficient information regarding Shepard's institutional performance and adjustment.

■ Since the Commission was instructed to reconsider its earlier refusal to grant the subpoenas in light of the court of appeals' evident belief that the material sought to be introduced was not "duplicative" and was indeed "crucial," and since the court of appeals explicitly reversed this Court's holding that the Commission's refusal under the circumstances of this case did not amount to a deprivation of Shepard's constitutional right to due process, only one conclusion may logically be drawn from the court of appeals' reversal of this Court's earlier decision: although a parolee does not have an "unfettered right to 'compulsory process'" in a revocation hearing, the circumstances in Lyman Shepard's case are such that the exclusion of the material sought to be subpoenaed deprived him of the opportunity to fully and fairly present his case and that therefore the Commission's action deprived him of due process of law. Thus the continued failure of the Commission to issue the subpoenas in the face of the mandate of the court of appeals is a constitutional deprivation compelling the granting of the writ.

■ Furthermore, the court of appeals specifically directed that the Commission conduct a hearing in accordance with its opinion within 14 days. Implicit in this directive is the command that the hearing be constitutionally valid. Yet the actual hearing of June 10, 1977 was undeniably infirm in that one of the two hearing examiners was the official who recommended and obtained the parole violation warrant application for Shepard. This situation directly contravenes the requirement of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), that parole revocation hearing examiners be individuals who have played no prior role in the proceedings involving the violation. Thus, the Court must conclude that on this ground as well the Commission failed to conduct a hearing in accordance with the decision of the court of appeals.

Thus, the petition is granted and a writ of habeas corpus shall issue. The Court is

mindful, however, that the parties may wish final clarification of the court of appeals' directives from that court itself. Accordingly, this Court will stay its writ to allow time for application to the court of appeals or a judge thereof. If no further stay is entered as a result of that application by June 21, 1977, the petitioner must be released.

The petitioner has also requested that a bail application be entertained if this Court grants the writ but stays its execution. While there is no specific statute authorizing a grant of bail by the district court during the pendency of a habeas corpus proceeding, the court inherently possesses the power to grant such bail in unusual circumstances. *Argro v. United States*, 505 F.2d 1374, 1377–78 (2d Cir. 1974); *United States ex rel. Epton v. Nenna*, 281 F.Supp. 388, 389 (S.D.N.Y.1968). In the latter case, Judge Frankel listed several factors to be considered—including the substantiality of the issues raised and whether there is a danger that the petitioner will abscond while on bail—in deciding whether "this was one of the relatively rare cases in which relief of this kind should be granted." *Id.* In the instant case, the Court has already decided that the petitioner must be released; thus, a "clear case on the law . . . [and] on the facts" is presented. *See Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir. 1972). Moreover, the Court also finds that the circumstances of this case, in the words of Mr. Justice Douglas, make "this application exceptional and deserving of special treatment in the interests of justice." *Aronson v. May*, 85 S.Ct. 3, 5, 13 L.Ed.2d 6, 9 (1964). Thus, the Court will entertain an application for bail pending appeal of this order, upon which application the petitioner may present evidence on other elements relevant to the application, including but not limited to the likelihood that he will flee.

So ordered.